UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,           Case Number 18-20270
v.                                                 Honorable David M. Lawson

ODELL GREGORY SIMMONS,

           Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Odell Simmons has filed a motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Because he has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion will be denied.

I.

Defendant Odell Gregory Simmons pleaded guilty to one count of possessing with intent to distribute controlled substances. On August 22, 2018, he was sentenced to 70 months in prison. He has served approximately 29 months of his term, and he presently is confined by the Bureau of Prisons (BOP) at Sandstone FCI, a low security facility in Minnesota that houses around 1,040 inmates. Public records of the BOP indicate that the defendant is scheduled to be released from prison on March 29, 2023. Simmons is 38 years old.

On August 3, 2020, Simmons filed through counsel his motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. In his motion, Simmons argues that he is qualified for release based on his medical conditions which include high

cholesterol, hypertension, and prediabetes. The government has filed a response opposing the motion on the merits.

The most recent data disclosed by the BOP indicates that there are no active coronavirus case among inmates or staff at the Sandstone facility, but one prisoner who previously was diagnosed now has recovered from the disease. Reports indicate that no prisoners have died. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). The defendant here relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*,

if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

Simmons is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of

high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied. However, Simmons has not advanced sufficiently compelling circumstances to warrant a sentence reduction based on his diagnosed medical conditions. Simmons's showing on the second element that he must establish to justify compassionate release — extraordinary and compelling reasons — is insufficient, so it is unnecessary to discuss the other elements. His health concerns are understandable, but insufficient to warrant immediate release.

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). The defendant's age (38) does not put him in a high-risk category, but he correctly points out that other pertinent recognized risk factors include hypertension and Type 1 and Type 2 diabetes. *See* CDC, Risk Factors: Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. However, "prediabetes" does not denote a diagnosed diabetic condition, but instead indicates merely the presence of higher than normal blood sugar which may make it more likely that a person will develop Type 2 diabetes. *See* WebMD: Types of Diabetes, https://www.webmd.com/diabetes/guide/types-of-diabetes-mellitus ("Prediabetes is when your

blood sugar is higher than it should be but not high enough for your doctor to diagnose diabetes. . . . Prediabetes can make you more likely to get type 2 diabetes and heart disease.").

Simmons's assertion that his risk is elevated by hypertension is not supported by recent medical records, which documented a blood pressure reading of 112/68, well within normal range. *See* Medical Report dated Feb. 12, 2020, ECF No. 37, PageID.535; WebMD: Know Your Blood Pressure Numbers, https://www.webmd.com/hypertension-high-blood-pressure/guide/diastolic-and-systolic-blood-pressure-know-your-numbers.  The CDC states that individuals with hypertension "*might* be at an increased risk for severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (emphasis added). Drilling down, though, that condition is grouped with "serious heart conditions" that predispose a person to higher risks of complications. Also included are "heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension." *At Higher Risk for Severe Illness*, Centers for Disease Control and Prevention (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Although the CDC recognizes "pulmonary hypertension" as a serious heart condition that may put people at a higher risk of severe COVID-19-related complications, Simmons's medical condition does not include him in the high-risk designation. *See, e.g., Pulmonary Hypertension-High Blood Pressure in the Heart-to-Lung System*, American Heart Association, https://www.heart.org/en/health-topics/high-blood-pressure/the-facts-about-high-blood-pressure/pulmonary-hypertension-high-blood-pressure-in-the-heart-to-lung-system (last visited August 10, 2020) (comparing pulmonary and systemic blood pressure). Whether systemic hypertension, alone, exposes someone to heightened risk is unclear. *Compare Malam* --- F. Supp. 3d ---, 2020 WL 2468481, at *7 (ordering supplemental briefing) *with Perez-Perez v. Adducci*, --- F. Supp. 3d

---, No. 20-10833, 2020 WL 2305276, at *3 (E.D. Mich. May 9, 2020) (granting petition for habeas corpus because defendant had hypertension and was housed in a facility with a confirmed case of COVID-19). Here, though, the records disclose no indication that Simmons has been prescribed any medication for elevated blood pressure.

Simmons also contends that his "high cholesterol" raises his medical risk, but that is not a significant risk factor recognized by the current CDC guidance on coronavirus. Moreover, the defendant's records indicate that he has been counseled several times during medical visits to begin medication to control his cholesterol, but he repeatedly has refused treatment stating that he dislikes the side effects. Any elevated risk as to that factor is due primarily to the defendant's refusal to accept recommended medical treatment, rather than unavailability of effective medical countermeasures.

The government points out that Simmons's recorded BMI at two exams in 2018 was above the threshold of 30, which is a recognized risk factor. But subsequent exams indicated that weight loss (down to 204 pounds in July 2019), puts his BMI at 26.9, within the normal range for his height (6' 1"). *See* Medical Report dated July 17, 2029, ECF No. 36, PageID.454. Simmons also asserts that a family history of coronary disease elevates his risk; and he is correct that certain heart conditions such as heart failure, coronary artery disease, cardiomyopathy, and pulmonary hypertension are recognized risk factors. But the available medical records do not suggest that he presently has any of those serious coronary conditions.

Published reports suggest that officials at FCI Sandstone have had unusual success in mitigating the dangers of the pandemic, since there has been only one documented case of infection among the prisoner population, with no active cases presently. To be sure, the government's position that the defendant is at low or no risk is somewhat less reassuring, considering the BOP's

admitted failure to implement any comprehensive prophylactic testing program, which calls into doubt the figures that it has reported. *Wilson*, 961 F.3d at 849 ("The flaws inherent in the half-measures employed by the BOP are amplified by the BOP's inability to test inmates for COVID-19. At the time of the preliminary injunction, the BOP had only obtained 75 tests for roughly 2,500 inmates at Elkton. The fact that more than two-thirds of those tests came back positive suggests an extremely high infection rate, but the BOP's testing shortage ensured that the record would not reflect the precise figure.") (Cole, Chief J., concurring); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at *9 (N.D. Iowa June 26, 2020) ("As of June 23, 2020, no cases of COVID-19 at Yankton FPC had been reported. However, without knowing whether the BOP is actively testing inmates and staff members for COVID-19 at Yankton FPC, the lack of active confirmed cases does not mean COVID-19 is not present at the facility. Nor does it mean there will not be a future outbreak at the facility. As the Government acknowledges, despite extensive measures to prevent transmission, more federal inmates will inevitably contract COVID-19 going forward."). Nevertheless, the available information indicates that Simmons's risk of infection is as low as it would be at home, and perhaps lower since the measures taken by BOP appear to have minimized the spread at Sandstone despite the recent alarming acceleration of the pandemic among the public at large, including in Minnesota, where recent daily case counts are trending among the highest levels observed during the pandemic. *See* Coronavirus Statistics: Minnesota, https://www.worldometers.info/coronavirus/usa/minnesota/.

Despite the ongoing hazards of the pandemic, it has been widely held that the mere possibility that COVID-19 may spread to a particular prison cannot independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). A "generalized risk of contracting COVID-19 and potentially developing the more severe symptoms

is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission." *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020).

Finally, Simmons also argues that the combination of his age and race elevate his risk of severe consequences from infection with the coronavirus. But, as noted above, the defendant's age is not within the range that has been recognized by public health authorities as triggering significantly increased risk. Moreover, as other courts have recognized, the fact of an inmate's race by itself does not constitute a risk factor for COVID-19 in the same way, as, for instance, an underlying medical condition does. *See, e.g.*, *United States v. White*, No. 15-20040, 2020 WL 2733891, at *5 (E.D. Mich. May 26, 2020); *Carlos M.D. v. Anderson*, No. 20-3908, 2020 WL 2487646, at *8 (D.N.J. May 14, 2020); *United States v. Leigh-James*, No. 15-188, 2020 WL 4003566, at *8 (D. Conn. July 15, 2020).

On similar and even more compelling facts, the Court has denied recently presented motions for compassionate release presented by defendants with similar risk factors. *E.g.*, *United States v. Ewings*, No. 17-20178 (E.D. Mich. Aug. 17, 2020) (denying motion by defendant with hypertension and prediabetes, residing in a facility with no active coronavirus infections among inmates); *United States v. Lucas*, No. 17-20627, 2020 WL 4437565, at *5 (E.D. Mich. July 31, 2020) (denying motion by defendant diagnosed with Type 2 diabetes and hypertension which were "well controlled" by medication, residing in a facility with no active infections). The same holds true here. The defendant has not established that his ongoing confinement poses a sufficiently serious danger to his health to warrant immediate release.

III.

Simmons has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 28) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: August 19, 2020